UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACINDA D. PERRY,                    :
                                      :CIVIL ACTION NO. 3:17-CV-1158
          Plaintiff,                 :
                                      :(JUDGE CONABOY)
          v.                         :
                                      :
NANCY A. BERRYHILL,                  :
Acting Commissioner of               :
Social Security,                     :
                                      :
          Defendant.                 :
                                      :
_____

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Acting Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act.  (Doc. 1.) Plaintiff protectively filed applications on September 25, 2014, alleging disability beginning on November 30, 2011.  (R. 16.)  The onset date was later amended to November 8, 2013.  (R. 37.)  After Plaintiff appealed the initial May 27, 2014, denial of the claims, a hearing was held by Administrative Law Judge ("ALJ") Michelle Wolfe on November 10, 2015.  (R. 32.)  ALJ Wolfe issued her Decision on January 5, 2016, concluding that Plaintiff had not been under a disability, as defined in the Act, during the relevant time period.  (R. 29.)  Plaintiff requested review of the ALJ's decision which the Appeals Council denied on April 26, 2017.  (R. 1-4.)  In doing so, the ALJ's decision became the decision of the Acting Commissioner.  (R. 1.)

Plaintiff filed this action on July 1, 2017. (Doc. 1.) She asserts in her supporting brief that the Acting Commissioner's determination should be remanded for the following reasons: 1) the ALJ did not provide meaningful discussion of listing 11.00 although she acknowledged that SSR 14-2p required her to consider diabetic neuropathy under listing 11.00; 2) the ALJ failed to include a discussion of the limitations of Plaintiff's diabetic neuropathy in formulating the residual functional capacity assessment and failed to include in the RFC the limits imposed by the consultative examiner on foot manipulation; 3) the ALJ erred in rejecting the opinion of the consultative examiner on the basis of her own medical opinions; and 4) the ALJ failed to properly evaluate and credit Plaintiff's subjective complaints of pain and limitations. (Dco. 29 at 24.) For the reasons discussed below, the Court concludes Plaintiff's appeal is properly granted.

## I. Background

Plaintiff was born on March 4, 1969, and has a high school education. (R. 26.) She has past relevant work as a caregiver. (R. 25.) In a Disability Report dated April 21, 2014, Plaintiff alleged her ability to work was limited by arthritis in her back, numbness and tingling in her hands, diabetes, and neuropathy. (R. 179.)

### A.  *Medical and Opinion Evidence*

As noted above, Plaintiff amended her disability onset date to

November 8, 2013. (R. 37.) The record shows that Plaintiff previously filed an application for benefits which was denied on November 7, 2013. (R. 16.) Because ALJ Wolfe determined that *res judicata* barred consideration of the period through November 7, 2013, any reference to evidence preceding November 8, 2013, is for background purpose only. (*See* R. 16.) The Court also focuses on evidence related to Plaintiff's diabetic neuropathy and pain because her asserted errors relate to these alleged problems. (*See* Doc. 29 at 1-2.)

On December 13, 2013, Plaintiff presented at St. Michael's Medical Center Emergency Department with complaints of blood in her urine and stools. (R. 303.) Her pain level was zero. (*Id.*) Review of Systems indicates Plaintiff denied arthralgias or back pain. (R. 304.) Physical exam showed lower extremity normal range of motion and normal gait. (R. 305.) Plaintiff was discharged to home later the same day. (R. 311.)

Plaintiff was admitted to St. Joseph's Medical Center on February 18, 2014, with the diagnosis of diabetic ketoacidosis secondary to possible urinary tract infection, sepsis secondary to urinary tract infection, dyslipidemia, and hypertension. (R. 356, 360.) Discharge diagnoses on February 21st included insulin-dependent diabetes mellitus type 2, uncontrolled. (R. 357.) Review of Systems indicated that Plaintiff had back pain with movement but physical exam showed no tenderness, 5/5 strength in

3

all extremities, normal sensation, and normal gait. (R. 362.)
Because Plaintiff complained of back pain, she had x-rays of the
lumbar spine done on February 18th which showed no acute fracture or
dislocation, unremarkable bony alignment, and vertebral body heigts
maintained. (R. 376.) The studies also showed a peripherally
calcified lesion measuring 5.8 centimeters arising from the left
side of the pelvis which the provider noted could be further
evaluated with cross-sectional imaging. (*Id.*)

On March 14, 2014, Plaintiff went to the Wilkes-Barre General
Hospital emergency room with high blood sugar. (R. 416.) Review
of Systems indicates that Plaintiff denied musculoskeletal and
neurologic problems. (R. 418.) Physical exam showed no back
problems, no upper or lower extremity problems, and no neurological
problems. (R. 419.) Plaintiff again went to the emergency room on
March 22nd with complaints of dizziness and abdominal pain. (R.
402-03.) Other than abdominal tenderness and distention, physical
exam was normal. (R. 405.)

On May 16, 2014, Plaintiff was seen by Ludmilla Aronzon, PA-C,
at Geisinger's Family Practice Kistler Clinic. (R. 487.) Office
notes indicate she was seen for emergency room follow-up where she
was seen for neuropathy of the feet and hands; bloodwork showed
uncontrolled diabetes mellitus. (*Id.*) No problems were recorded
on physical exam. (R. 489.) Assessments included diabetic
neuropathy for which Gabapentin was prescribed. (R. 489.)

On May 19, 2014, Plaintiff was seen in the Geisinger Wyoming Valley emergency department for hand and foot pain. (R. 1525.) Plaintiff reported by history that she had been experiencing pain/numbness for one and a half years but it had gotten acutely worse the night before. (*Id.*) She said she had not been checking her glucose levels because she had run out of strips a week earlier. (*Id.*) Physical exam showed no back problems; normal lower extremities with no edema, discoloration, or calf tenderness; and normal sensorium with no weakness of arms or legs. (R. 1527.) Plaintiff was discharged with a diagnosis of acute extremity pain and directed to establish care with a primary care provider. (R. 1529.)

On May 22, 2014, Jay Willner, M.D., conducted an internal medicine examination on referral from the Bureau of Disability Determination. (R. 470-73.) Plaintiff's chief complaints were pain from arthritis in her back (without radiation) and diabetes mellitus with symptoms including numbness, burning, and stinging in her feet. (R. 470.) Plaintiff reported she lived with her daughter and was unable to do activities of daily living due to poor eyesight and neuropathy in her hands. (R. 471.) Dr. Willner found that Plaintiff took short steps, she had difficulty walking on heels and toes due to pain, she declined to squat, her stance was normal, she needed no assistive device, she did not need help changing for the exam or getting on and off the exam table, and she

was able to rise from a chair without difficulty.  (R. 471.)
Musculoskeletal exam showed positive single leg raise at ten
degrees bilaterally, confirmed sitting.  (R. 472.)  Neurologic exam
showed deep tendon reflexes depressed in upper and lower
extremities, diminished sensation on the right lateral and
posterior foot, as well as the right thumb and forearm to about six
centimeters below the elbow, and 5/5 strength in the upper and
lower extremities.  (*Id.*)  Examination of fine motor activity
showed hand and finger dexterity intact, 4/5 grip strength
bilaterally; Plaintiff was able to unzip and zip, unbutton and
button, and untie, but whe was unable to tie.  (*Id.*)  Dr. Willner
diagnosied diabetes mellitus, neuropathy, hypertension, and back
pain.  (R. 473.)

　　Dr. Willner completed a Medical Source Statement of Ability To
Do Work-Related Activities (Physical) on the same date and opined
that Plaintiff could never do any lifting or carrying because of
her weak grip.  (R. 474.)  He found she could sit, stand, and walk
for eight hours each without interruption and total in an eight-
hour day.  (R. 475.)  Regarding the use of her hands, Plaintiff
could continuously reach bilaterally and could never handle,
finger, feel, or push/pull due to weakness and neuropathy.  (R.
476.)  Dr. Willner concluded Plaintiff could never operate foot
controls with her right foot because of neuropathy and could
continuously do so with her left foot.  (*Id.*)  He also identified

neuropathy as the reason Plaintiff could never perform all identified postural activities. (R. 477.) He noted that Plaintiff's impairments did not affect her vision or hearing, she could tolerate no exposure to identified environmental conditions because of weakness and neuropathy, but she could engage in moat activities identified, including shopping, using standard public transportation, climbing a few stairs at a reasonable pace, preparing simple meals, and caring for personal hygiene. (R. 477-79.) However, he found Plaintiff could not sort, handle, or use paper/files. (R. 479.)

The Range of Motion Chart accompanying Dr. Willner's opinion indicates mostly normal findings but Plaintiff's grip strength was eighty percent in both the left and right hands. (R. 480-83.)

On May 28, 2014, Plaintiff was seen at Geisinger's Kistler Clinic by Sandra Roberts Korpusik, RN, a Case Manager. (R. 503.) She noted Plaintiff was unable to exercise due to neuropathy pain. (*Id.*) Plaintiff said the pain was in her legs and hands and she rated it as 4/10 at the time of her office visit. (R. 504.) Recorded Functional Status indicated Plaintiff did not need assistance with activities of daily living. (R. 504.) Ms. Korpusik prioritized goals to include scheduling a diabetic eye exam; Plaintiff should bring her meter and log book to her endocrinology appointment on June 6th; and Plaintiff was to request insulin pens at that appointment. (R. 505.) Identified barriers

included lack of or limited access to reliable transportation and patient/caregiver's lack of understanding of Plaintiff's condition and prescribed treatment plan. (R. 506.)

On June 5, 2014, Plaintiff had an endocrinology appointment and was seen by Jill C. Sandutch, CRNP, and Albert B. Y. Sun, M.D. (R. 889.) Plaintiff reported headaches as well as pain and numbness in her feet and hands. (*Id.*) She said she did a lot of walking for exercise. (*Id.*) Physical exam showed normal strength in her upper and lower extremities, no focal motor/sensory deficits, and a normal gait. (R. 893.) Annual diabetic foot screening showed onychomycosis of the nails on both feet; palpable dorsalis pedis and posterior tibial pulses on both feet; and Plaintiff reported feeling monofilamental pressure on plantar surface of both feet. (*Id.*) To address Plaintiff's "significant neuropathy pain," Gabapentin dosage was increased and several directives were given regarding diabetes monitoring and management, including referrals for diabetes education and a diabetes eye exam. (*Id.*)

On June 27, 2014, Plaintiff was seen by Guillermo L. Rodriguez, M.D., as a new patient at the Geisinger Kistler Clinic Family Practice. (R. 517.) Plaintiff reported she had pain all over, she had been diagnosed with diabetic neuropathy, and she had been seen for pain management. (*Id.*) Physical exam of the extremities did not show joint deformities, effusion, inflammation,

edema, clubbing, or cyanosis. (R. 520.) Dr. Rodriguez adjusted Plaintiff's medication regimen and planned to see her again in one month. (*Id.*)

At her July appointment with Dr. Rodgiguez, Plaintiff reported pain all over her body, worse in the lower back. (R. 534.) She said "anything" worsened her pain, it was severe all the time, her lower back, hands and feet hurt and she had numbness in her feet. (*Id.*) Physical exam showed that Plaintiff had Tinnel's sign bilaterally, positive Phalen's sign, and severe spasm on the left latissimus dorsi muscle. (R. 353.) Dr. Rodriguez diagnosed carpal tunnel syndrome, neuropathy, and muscle spasm. (*Id.*)

On August 26, 2014, Plaintiff was seen by Ryan J. Ness, M.D., of the Interventional Pain Center for evaluation. (R. 1052.)

On September 23, 2014, she was seen at the Interventional Pain Center by Laurel Foxworth Dodgson, PA-C, and Jolly Umbao, M.D., with the chief complaint of lower back pain. (R. 1070.) Plaintiff specifically complained of pain in her lower back bilaterally without radiation which she said had been progressively worsening over the preceding two to three years. (*Id.*) She also complained of numbness and pain in her distal lower extremities, feet, and hands. (*Id.*) Plaintiff said her lower back pain worsened with all activities and she could not identify any alleviating factors. (*Id.*) Physical exam of the lower extremities showed no edema, cyanosis, or ulcerations; exam of the back did not show any

tenderness; and neurologic exam showed Plaintiff was able to stand heel/toe, her gait was intact, and sensation to light touch was decreased in the distal lower extremities. (R. 1073.) Motor strength was 5/5 in the upper extremities bilaterally except finger abduction was 4/5 on the left. (*Id.*) Motor strength testing of the lower extremities showed poor effort and findings included hip flexion/L2, L3-5/5 bilaterally; quadriceps/L4-4+/5 bilaterally; and ankle dorsiflexion/L4-5/5 bilaterally. (*Id.*) The providers also found tenderness in the lumbar facets bilaterally and SI joints bilaterally and lumbar range of motion showed pain with flexion and extension. (R. 1074.) They diagnosed lumbago, and Dr. Ombao added that the chronic back pain had an element of deconditioning. (*Id.*) Lumbar x-rays as well as physical therapy were recommended. (*Id.*) Plaintiff was instructed to remain active as tolerated and a trial of Zanaflex was prescribed. (*Id.*) A September 23, 2014, x-ray of the lumbosacral spine showed mild degenerative disc disease, stable. (R. 1081.)

Plaintiff saw Dr. Sun again on October 20, 2014. (R. 1097.) Dr. Sun recorded no problems on physical examination. (R. 1097-98.) He noted that her glucoses were very well controlled at that time. (R. 1099.)

On November 5, 2014, Plaintiff was seen at Geisinger's Interventional Pain Center for her low back pain. (R. 1122.) Plaintiff reported that her pain was worse with prolonged standing

and walking and her diabetic neuropathy was being addressed with medication. (*Id.*)  Plaintiff said she was not seeing much relief with ongoing physical therapy. (*Id.*)  Physical exam showed tenderness in bilateral lumbar facets, pain in lower back worse with extension, bilateral SI tenderness with positive Patrick's bilaterally, paraspinal muscle tenderness and spasm, grossly intact sensation, and normal muscle strength in upper and lower extremities bilaterally. (*Id.*)

At a follow-up visit with Dr. Rodriguez on November 28, 2014, Plaintiff reported that her numbness and tingling were better but the knife-like pain on both feet was getting worse and was aggravated by walking and standing. (R. 557.)  She also reported that physical therapy was not helping her pain. (*Id.*)  Examination of the extremities showed some soreness and irritated dorsal aspect of the foot. (R. 559.)  Dr. Rodriguez prescribed Lyrica for the neuropathy and chronic pain. (*Id.*)

Plaintiff was seen by podiatrist Lucia K. Nguyen, DPM, on December 2, 2014, with the chief complaint of painful, elongated thick toenails and calluses. (R. 1156.)  Podiatric vascular exam showed palpable pulses, trace edema, and decreased hair growth. (R. 1158.)  Neurologic exam showed "Spinothalamic: temperature, pain, light touch[;] Left: diminished[;] Right: diminished." (*Id.*)  Assessment was onychomycosis with painful elongated thick toenails x 10; bilateral diabetic neuropathy; and xerosis with painful

calluses x 4 lesions.  (R. 1160.)  Dr. Nguyen prescribed diabetic custom molded shoes, did manual and electric grinding of the nails, and trimmed the lesions.  (*Id.*)  She also noted that she had a long discussion with Plaintiff about diabetic foot care and planned to see her back in three months for follow-up.  (*Id.*)

Dr. Ombao administered bilateral sacroiliac joint injections on December 10, 2014, after Plaintiff reported physical therapy did not help her pain.  (R. 1180.)  He noted that patellar and ankle reflexes were normal but Plaintiff had pain on back extension and facet loading, as well as exquisite lumbar paraspinal muscle tenderness.  (*Id.*)  These injections were not effective and Plaintiff had lumbar facet injections on February 6, 2015.  (R. 1220, 1266.)

Dr. Rodriguez noted on January 15, 2015, that depression was still an issue, hand and foot pain was still present, and Plaintiff was unable to move and work due to pain.[1]  (R. 595.)  He found no problems on physical exam and his diagnoses included neuropathy for which Plaintiff was to take Tylenol with codeine as needed for pain and also for generalized osteoarthritis.  (R. 598.)

Having begun to see a social worker, Tina M. Knorr, LCSW, in December 2014, Plaintiff reported on February 11, 2015, that she was feeling "great."  (R. 575, 655.)  She reported that her pain

---

[1]  This notation appears to be based on Plaintiff's subjective reporting as it is in the History of Present Illness section of the office notes.  (R. 595.)

had been adequately addressed and she felt much better, she was able to walk and walked to her appointment. (R. 655.) Plaintiff denied a depressed mood and said she was focused on staying active. (*Id.*) When Plaintiff reported more knee and leg pain later in February, she also said she needed to refill her pain medication. (R. 666.) She acknowledged the need to walk and keep moving but said she was in too much pain for her to accomplish these things. (*Id.*) Plaintiff reported less pain at her March 11th appointment with Ms. Knorr and said she was having good days and bad days with her level of depression linked to the amount of pain. (R. 693.)

On March 27, 2015, Plaintiff returned to the Interventional Pain Center for reevaluation of her low back pain. (R. 1306.) Ms. Dodgson noted that Plaintiff had failed SI and lumbar facet injections and her low back pain included radiation into her legs posteriorly to her calves. (*Id.*) Physical exam showed tenderness with light palpation of her paraspinal muscles, SI tenderness, sensation grossly intact bilaterally, and lower extremity strength symmetric and equal bilaterally. (R. 1307.)

Plaintiff had a rheumatology consultation with Jonida K. Cote, D.O., on April 6, 2015. (R. 1340.) Plaintiff complained of pain "mainly in her hands and feet, but sometimes she also has pain in her lower back, elbows and knees," and she had numbness and tingling in her hands and feet. (*Id.*) Musculoskeletal exam showed hands/wrists tender to palpation over MCPs, PIPs; right shoulder

13

tenderness and decreased range of motion; and knee crepitus bilaterally. (R. 1342-43.) Dr. Cote assessed polyarthritis and a concern for inflammatory arthritis. (R. 1343.) She also planned further evaluation, including diagnostic studies. (*Id.*) April 6th x-rays of the hands/wrists showed no radiologic evidence of inflammatory arthritis (R. 1354); April 8th x-rays of the feet were unremarkable, with no evidence of inflammatory arthritis (R. 1355); and April 8th x-rays of the sacroiliac joints were unremarkable (R. 1355-56).

On Apri 18, 2015, Plaintiff saw Dr. Rodriguez for follow-up. (R. 716.) He noted that Plaintiff was on prednisone due to joint swelling and she needed assistance with activities of daily living except for dressing herself. (*Id.*) Plaintiff reported that the hand numbness and tingling got better with Percocet. (*Id.*) She also said pain was severe with numbness and tingling when she got up in the morning. (*Id.*) Physical exam showed bilateral reduced sensation along median nerve distribution, positive Phalen's maneuver, positive Tinel's sign, and positive weakness of thumb/pinky pincer grasp. (R. 719.) Dr. Rodriguez assessed diabetes mellitus type 2, carpal tunnel syndrome, neuropathy, and chronic pain. (*Id.*)

At the May 5, 2015, follow-up visit with Dr. Cote, physical exam showed tenderness to palpation over multiple areas including muscle area over arms, legs, and upper back; hands tender over the

14

MCPs and PIPs bilaterally; feet tender to palpation over MTPs and positive squeeze test; and intact sensation to light touch intact and normal motor strength. (R. 1394.) Follow-up on May 27th indicated Prednisone helped with the hand and foot joint pain which was down to 5/10 in intensity but Plaintiff still had pain on the lateral aspect of her right thigh and right lateral epicondyle. (R. 1406.) Physical exam was normal except for tenderness to palpation over the right lateral epicondyle and knee tenderness over the lateral left thigh between the left hip and knee. (R. 1408.)

A May 28, 2015, MRI of the lumbar spine showed scattered mild degenerative changes and the study was otherwise "unremarkable." (R. 1314.)

At her May 29, 2015, visit with Dr. Rodriguez, Plaintiff reported that she was doing well as long as she used the pain medication with ibuprofen. (R. 762.) Upon examination of Plaintiff's extremities, Dr. Rodriguez noted "leg pain present, severe neuropathy." (R. 768.)

On June 9, 2015, Plaintiff saw Dr. Sun who noted that Plaintiff had no focal motor/sensory deficits and had a normal gait. (R. 1438.) Foot testing showed normal sensation bilaterally. (*Id.*)

Plaintiff saw her podiatrist, Dr. Nguyen, on June 16, 2015. (R. 1451.) Plaintiff reported neuropathy with constant numbness

15

and tingling in both feet. (*Id.*) Dr. Nguyen noted that Plaintiff had advanced trophic changes, venous insufficiency, and edema. (*Id.*) Neurologically, Dr. Nguyen found a loss of protective sensation bilaterally. (*Id.*)

When Plaintiff saw Dr. Rodriguez on July 6, 2015, he noted that Plaintiff's diabetes was "out of control" and "neuropathy is getting worse." (R. 794.) On examination, Dr. Rodriguez found tender paralumbar muscles bilaterally and assessed neuropathy as the primary encounter diagnosis. (R. 798.)

On July 30, 2015, Plaintiff saw Dr. Cote who noted that the Prednisone trial helped some and Plaquenil, which was started at the end of May 2015, seemed to help some but not enough. (R. 1509.) She further noted that Plaintiff's pain was fifty percent better with Plaquenil but she was still having pain in her hands and feet. (*Id.*) Except for hand pain in her MCPs and PIPs and knee pain with range of motion, physical exam was normal, including intact sensation to light touch and normal motor strength. (R. 1511-12.) In her Assessment, Dr. Cote stated she thought rheumatoid arthritis was a likely possibility and she adjusted Plaintiff's medication regimen. (R. 1512.)

Plaintiff saw Dr. Rodriguez on August 11, 2015, for a follow-up visit. (R. 830.) Plaintiff reported that she had been having headaches and chest pain over the preceding two months which she related to being upset about her children. (R. 831.) Physical

exam showed severe spasm of the trapezius muscle with irradiation to the occipital area as well as sore and irritated chest muscles. (R. 835.)  Dr. Rodriguez assessed tension-type headache, neuropathy, and diabetes mellitus, type 2.  (*Id.*)

On October 21, 2015, Plaintiff saw Ms. Knorr, her therapist, and reported she was in a lot of pain, aqua therapy helped only while she was in the water, and she was trying to "just 'live with it.'"  (R. 1616.)  Plaintiff stated that the therapy, medication, and thirty minute daily walks helped to keep her mobile and she felt that was important.  (*Id.*)  Plaintiff also expressed to Ms. Knorr that she was doing better and was not sure whether she needed another appointment.  (*Id.*)  The plan was for her to call if she wanted to schedule one.  (*Id.*)

## B.   *ALJ Hearing*

Plaintiff's hearing took place on November 10, 2015.  (R. 32.) Plaintiff attributed her inability to return to any type of work to her diabetes, neuropathy, and arthritis in her back.  (R. 38.)  She said she had limited feeling in her hands and feet and she was too weak to do any type of work.  (*Id.*)  Regarding the problems with her hands, Plaintiff explained that she felt like she was being stuck with pins and needles if she tried to grab something and then she got numbness.  (R. 51.)  Regarding her feet, Plaintiff said the symptoms were the same as her hands.  (Id.)  She testified that medication did not help either her lower back pain or her

17

hands/feet symptoms.  (R. 52.)  She added that a glass of water, her cell phone, and her purse where about the only things she could pick up.  (*Id.*)

Plaintiff testified that her daughter did all the cooking and cleaning because she had not been able to stand long enough to do these activities since 2013.  (R. 39.)  Plaintiff also said her daughter did all the shopping, she did not lift or carry anything, she had difficulty sitting because of severe pain in her lower back, she could not stand for longer than three or four minutes due to the back pain as well as numbness and tingling in her feet from the neuropathy, and she could walk for less than a mile.  (R. 42.)

When asked about exercising, Plaintiff said she stopped walking in February 2015.  (R. 40.)  She was using a cane at the time of the hearing and said Dr. Rodriguez recommended that she get one in August 2015.  (*Id.*)

ALJ asked Plaintiff what she did all day and Plaintiff responded "I just lie in bed all day."  (R. 41.)  When asked by her attorney whether there was a bathroom on the same floor as her bedroom, Plaintiff said the bathroom was downstairs but she used a commode in her room.  (R. 43.)  Plaintiff testified that she did not go out at all (except for doctors' appointments) or have any visitors.  (R. 44, 54.)  She also said she needed her daughter's help to get dressed and her daughter prepared her meals and brought them to her upstairs.  (R. 46, 50.)

Regarding mental health treatment, Plaintiff testified that she was seeing Ms. Knorr at the Kistler Clinic every two weeks and she had started in about February 2015 on the recommendation of Dr. Rodriguez. (*Id.*)

ALJ Wolfe asked Vocational Expert Karen Keen to consider an individual of Plaintiff age, education, and work experience who had the residual functional capacity ("RFC") to perform light work but subject to the following:

> The individual would have occasional balancing, stooping, crouching, crawling, kneeling, and climbing, but never on ladders, ropes or scaffolds.
>
> The individual also would need to avoid concentrated exposure, temperature extremes of cold and heat; wetness and humidity; fumes, odors, dust, gases, and poor ventilation; vibration, and hazards, including moving machinery and unprotected heights.

(R. 57.) Ms. Keen said that such an individual could perform Plaintiff's past work as a cashier and there were other exemplary jobs the individual could perform. (R. 57-58.) Ms. Keen further testified that if the individual were limited to only occasional pushing and pulling with the lower extremity, she could perform the jobs identified. (R. 58.) However, she said if the individual were limited to four hours of standing and walking during the workday, the identified positions would be eliminated. (*Id.*) When asked if other jobs would exist for such an individual, Ms. Keen said that would be sedentary unskilled work and she identified

several exemplary positions in that category and adding the option to transfer positions would not have an effect. (R. 58-59.) Ms. Keen said the light duty jobs would be eliminated if the individual were limited to frequent fingering and handling but the light-duty positions would not be affected if the individual were able to use a mouse or keypad. (R. 59.) However, if the individual were limited to occasional fingering, the positions would be affected. (*Id.*)

## C. *ALJ Decision*

In her January 1, 2016, Decision, ALJ Wolfe found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis; sacroiliitis; myalgia and myositis; and diabetes mellitus. (R. 19.) ALJ Wolfe noted Plaintiff had been assessed with lumbago but it was not a medically determinable impairment and had been covered under the severe impairment of degenerative disc disease of the lumbar spine. (*Id.*) She also noted that medical records indicated numerous additional diagnoses: tinea cruris, hyperglycemia, headache, urinary tract infection, diabetic ketoacidosis, sepsis, dyslipidemia, MRSA, dyselectrolytemia with hypophosphatemia, hypokalemia and hypomagnesia, groin candidal infection, lyperlipidemia, viatmin D deficiency, disorder of refraction and accommodation, nodular goiter status post thyroidectomy, onychomycosis, xerosis, depression, generalized anxiety disorder, and carpal tunnel

syndrome. (*Id.*) ALJ Wolfe did not categorize these diagnoses. (*Id.*) She determined that Plaintiff's medically determinable mental impairments of depression and generalized anxiety disorder, considered singly and in combination, did not cuase more than minimal limitations in Plaintiff's ability to perform basic mental work activities and, therefore, were nonsevere. (*Id.*) ALJ Wolfe concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments after considering listings 1.02, 1.02A, 1.02B, 1.04, 1.04A, 1.04B, 1.04C, fibromyalgia (under SSR 12-2p); and diabetes mellitus under 9.00 *et seq.*, SSR 14-2p, and related listings 1.00, 2.00, 4.00, 5.00, 6.00, 8.00, 11.00, and 12.00. (R. 21-22.)

ALJ Wolfe then found that Plaintiff had the RFC to perform light work, adding

> [s]he can do occasional balancing, stooping, crouching, crawling, kneeling and climbing, but never on ladders, ropes or scaffolds. She can do occasional pushing and pulling with her lower extremities. The claimant must avoid concentrated exposure to temperature extremes of cold and heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, vibrations and hazards including moving machinery and unprotected heights.

(R. 22.) Based on this RFC, ALJ Wolfe determined that Plaintiff could not perform her past relevant work but she could perform jobs which existed in significant numbers in the national economy. (R. 25-26.) She then found that Plaintiff had not been under a

disability as defined in the Social Security Act from November 30, 2011, through the date of the decision.  (R. 27.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§

---

[2]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. 26.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence

23

means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits,

"to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .")). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the

25

facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

As set out above, Plaintiff asserts the Acting Commissioner's determination should be remanded for the following reasons: 1) the ALJ did not provide meaningful discussion of listing 11.00 although she acknowledged that SSR 14-2p required her to consider diabetic neuropathy under listing 11.00; 2) the ALJ failed to include a discussion of the limitations of Plaintiff's diabetic neuropathy in formulating the residual functional capacity assessment and failed to include in the RFC the limits imposed by the consultative examiner on foot manipulation; 3) the ALJ erred in rejecting the opinion of the consultative examiner on the basis of her own medical opinions; and 4) the ALJ failed to properly evaluate and credit Plaintiff's subjective complaints of pain and limitations. (Doc. 29 at 24.)

### A. *Listing 11.00*

Plaintiff first points to error regarding ALJ Wolfe's discussion of neuropathy at step three of the sequential evaluation

process. (Doc. 29 at 24-26.) Defendant responds that substantial evidence supports the ALJ's decision that Plaintiff failed to meet her burden of showing that she was disabled *per se* at step three and Plaintiff does not now proffer evidence to show that her conditions met or medically equaled all of the criteria under the listing. (Doc. 34 at 21-23.) The Court concludes Plaintiff has not met her burden of showing the alleged error is cause for remand.

In *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810 (3d Cir. 2016) (not precedential), a Third Circuit panel addressed the plaintiff's assertion that the ALJ did not properly analyze certain impairments under the listings at step three but the plaintiff did not identify how he met or equaled a listing and did not offer an "explanation of how further analysis could have affected the outcome of his disability claim." *Id.* at 814. In these circumstances, the panel concluded "[e]ven if we found a portion of the ALJ's step-three analysis to be deficient, we would have no reason to conclude that the deficiency in analysis was harmful to [the plaintiff's] claim." *Id.* This conclusion was based on the following analysis:

> Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals. *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009). Holloman therefore must "explain [ ] ... how the ... error to which he points could have made any difference." *Id.* at 413, 129 S.Ct.

1696 (emphasis added).[3] Holloman merely asserts that harm was done because a positive finding at step three would have eliminated the need to proceed through steps four and five. But that assertion entirely sidesteps the question, which is how Holloman might have prevailed at step three if the ALJ's analysis had been more thorough. Holloman offers no answer to that question and therefore no basis for us to remand the case to the ALJ. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir.2005) ("Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate *815 her hands and fingers. That generalized response is not enough to require a remand....").

*Id.* at 814-15.

---

[3] *Holloman* footnoted the explanation as follows:

Of course, during non-adversarial administrative proceedings before an ALJ, a claimant's burden is different because of "the nature of Social Security disability proceedings which are inquisitorial rather than adversarial and in which [i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n. 2 (3d Cir.2000) (quotation marks omitted). But when that claimant then challenges the ALJ's decision in a federal court, the proceedings are adversarial and rely on the parties to raise arguments. If the claimant believes that an error was made, he must clearly identify the error and explain how the error actually "affect[ed] [his] 'substantial rights.' " *Shinseki*, 556 U.S. at 407, 129 S.Ct. 1696 (quoting 28 U.S.C. § 2111).

*Holloman*, 639 F. App'x at 814 n.3.

28

Here Plaintiff does not attempt to make the showing explained in *Holloman*. (*See* Doc. 29 at 25-26; Doc. 39 at 5-6.) In her reply brief, Plaintiff takes the position that "she met her burden." (Doc. 39 at 6.) The Court cannot agree with this assessment in the absence of a proffer of how Plaintiff "might have prevailed at step three if the ALJ's analysis had been more thorough." 639 F. App'x at 814 (citing *Rutherford*, 399 F.3d at 553). As in *Holloman*, Plaintiff offers no answer to that question and therefore provides no basis for remand. *Id.*

## B.    *Diabetic Neuropathy Limitations*

Plaintiff next asserts the ALJ failed to include a discussion of the limitations of Plaintiff's diabetic neuropathy in formulating the residual functional capacity assessment and failed to include in the RFC the limits imposed by the consultative examiner on foot manipulation. (Doc. 29 at 26.) Defendant responds that ALJ Wolfe fully accounted for the functional limitations associated with Plaintiff's diabetes mellitus in assessing the RFC and did not err based on foot control limitations. (Doc. 34 at 27, 28.) The Court concludes Plaintiff has satisfied her burden of showing the claimed error is cause for remand.

## 1.    **Neuropathy**

Plaintiff specifically argues that the ALJ acknowledged she had been diagnosed with neuropathy but she neither discusses it at

step two as a severe or non-severe impairment or includes related limitations in the RFC.  (Doc. 29 at 26.)  Pointing to the finding of several treating doctors that she had severe bilateral diabetic neuropathy in both her hands and feet, Plaintiff maintains the ALJ provided no meaningful limits in the RFC related to limitations in her ability to use her hands, stand, or walk consistent with the limitations that would clearly be present with the condition. (Doc. 29 at 28.)

   To the extent Plaintiff asserts a step two error (*see* Doc. 29 at 26), the Court agrees that ALJ Wolfe did not discuss diabetic neuropathy as an impairment at step two.  (*See* R. 19-20.)  The Court also agrees that the step two error may be deemed harmless where the limitations related to the impairment are included in the RFC.  If the sequential evaluation process continues beyond step two, an ALJ's failure to properly consider  a specific impairment at step two may be deemed harmless if the functional limitations associated with the impairment are accounted for in the RFC. *Salles v. Commissioner of Social Security*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (not precedential) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).  In other words, because the outcome of a case depends on the demonstration of functional limitations rather than a diagnosis, where an ALJ identifies at least one severe impairment and ultimately properly characterizes a claimant's symptoms and functional limitations, the

30

failure to identify a condition as severe is deemed harmless error. *Garcia v. Commissioner of Social Security*, 587 F. App'x 367, 370 (9th Cir. 2014) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)); *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006) (not precedential) ("Mere presence of a disease or impairment is not enough[;] a claimant must show that his disease or impairment caused functional limitations that precluded him from engaging in any substantial gainful activity*."); Burnside v. Colvin*, Civ. A. No. 3:13-CV-2554, 2015 WL 268791, at *13 (M.D. Pa. Jan. 21, 2015); *Lambert v. Astrue*, Civ. A. No. 08-657, 2009 WL 425603, at *13 (W.D. Pa. Feb. 19, 2009).

Plaintiff focuses her argument on ALJ Wolfe's failure to include functional limitations in the RFC related to diabetic neuropathy and the Court will do the same. (Doc. 29 at 27-30.) Regarding the relevant time period, ALJ Wolfe provides approximately two pages of evidence review and mentions neuropathy twice: the podiatrist's finding on December 2, 2014, that Plaintiff had bilateral diabetic neuropathy; and the consultative examiner's assessment that Plaintiff could "never lift, carry, handle, finger, feel, push or pull with her hands because of a weak grip and neuropathy." (R. 25.) ALJ Wolfe noted the consultative examiner found Plaintiff's "deep tendon reflexes were depressed in both upper and lower extremities" and she "had diminished sensation on her right later [sic] and posterior foot and right thumb and

forearm." (R. 24.) She also noted that Plaintiff's primary care doctor found on physical examination that Plaintiff had "severe pain in both hands and feet" on August 28, 2014, and "some soreness and irritation of the dorsal aspect of her foot" on November 28, 2014. (*Id.*)

Merely reviewing evidence does not satisfy the ALJ's obligation to provide an explanation for the weight attributed to probative evidence and a failure to mention and explain contradictory objective probative evidence is error. *Burnett*, 220 F.3d at 119-20; *Dobrowolsky*, 606 F.2d at 406; *Cotter*, 642 F.2d at 706-07. Depressed deep tendon reflexes, diminished sensation, and localized pain are symptoms associated with diabetic neuropathy,[4] yet ALJ Wolfe does not explain her consideration of the evidence which arguably supports limitations associated with the impairment and which, importantly, the consulting physician found to be the basis of multiple limitations. (R. 476-78.) Although ALJ Wolfe cited reasons for discounting the consulting examiner's limitations related to neuropathy (R. 25), the reasons cannot be deemed substantial evidence because, in addition to not discussing the probative evidence she had set out, ALJ Wolfe did not acknowledge a significant amount of medical evidence supporting the neuropathy diagnosis and/or symptoms and limitations which may be related to

---

[4] https://www.webmd.com/diabetes-neuropathy; https://www.medscapt.com/answers/1170337-4949/how-are-deep-tendon-reflexes-assessed-in-diabetic-neuropathy.

it.  This is particularly important given notations that the condition was worsening following Dr. Willner's assessments.  (*See*, *e.g.*, R. 1509.)

The evidence ALJ Wolfe failed to mention includes the following:

- Plaintiff's diabetic neuropathy diagnosis on May 16, 2014, for which Gabapentin was prescribed to address hand and foot pain (R. 489);

- May 19, 2014, Geisinger Wyoming Valley emergency department records indicating Plaintiff was seen for hand and foot pain/numbness which she had experienced for over a year but had gotten acutely worse the night before (R. 1525);

- June 5, 2014, endocrinology appointment where office notes described Plaintiff as having "significant neuropathy pain" and Dr. Sun increased the Gabapentin dosage (R. 893);

- September 23, 2014, Interventional Pain Center visit where Plaintiff's complaints included numbness and pain in her hands and feet, neurologic exam showed decreased sensation to light touch in the lower distal extremities, and 4/5 finger abduction on the left;

- December 2, 2014, office visit with Dr. Nguyen, a podiatrist, who found diminished sensation to light touch

bilaterally and assessed bilateral diabetic neuropathy (R. 1158, 1160);

- Dr. Rodriguez's office visit notes of January 15, 2015, which indicated Plaintiff was unable to move and work due to pain and he diagnosed Tylenol with codeine for neuropathy pain (R. 595, 598);

- May 5, 2015, office visit physical exam by Dr. Cote which showed feet tender to palpation over MTPs and positive squeeze test (R. 1394);

- May 29, 2015, "severe neuropathy" notation by Dr. Rodriguez upon examination of Plaintiff's extremities (R. 768);

- June 16, 2015, office visit with Dr. Nguyen where Plaintiff reported neuropathy with constant numbness and tingling in both feet and Dr. Nguyen noted that Plaintiff had advanced trophic changes, venous insufficiency, and edema, as well as a loss of protective sensation bilaterally (R. 1451);

- Dr. Rodriguez's July 6, 2015, notation that Plaintiff's neuropathy was getting worse (R. 1509).

Just as failure to analyze and explain evidence set out in the decision constitutes error, failure to mention and explain additional evidence supporting the diabetic neuropathy diagnosis

and arguably associated limitations is error.[5]  *See, e.g., Burnett*, 220 F.3d at 122.  Therefore, this matter must be remanded and, on remand, all pertinent evidence must be reviewed with an explanation of the reasons for rejecting evidence arguably supporting greater limitations than those assessed in the RFC.

## 2.  **Foot Control Limitation**

Plaintiff contends the ALJ erred because the RFC did not include the limitation regarding Plaintiff's inability to use her right foot for the operation of foot controls, a limitation which the ALJ had "given weight" when assessing Dr. Willner's opinion. (Doc. 29 at 30.)  Defendant maintains the argument is unavailing because the ALJ also gave weight to Dr. Willner's opinion that Plaintiff could "continuously" use her left foot for the operation of foot controls.  (Doc. 34 at 28.)

Assuming *arguendo* it was error for the ALJ to exclude the right foot limitation in her RFC, Plaintiff does not show how the claimed error would affect the outcome of the case because she has

---

[5]  The Court does not infer that the cited evidence is not contradicted by other evidence of record.  The need for careful analysis and explanation is critical where, as here, physical examination findings vary from visit to visit.  For example on June 9, 2015, Dr. Sun noted no motor/sensory deficits and foot testing showed normal sensation (R. 1438), but one week later (on June 16, 2015) Dr. Nguyen found advanced trophic changes and loss of protective sensation bilaterally (R. 1451).  Caution regarding the prohibition against lay interpretation of medical evidence is of particular importance where the record presents varied physical findings and the need for clarification from an acceptable medical source may be warranted.  *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

not shown that the right foot limitation would prevent her from performing the exemplary jobs of office helper, ticket sales, or office helper identified by the VE. (*See* R. 26.)  As discussed above, without such a showing, remand on the basis alleged is not required. (*See supra* pp. 27-29.)

While Plaintiff has not shown that the claimed foot limitation error alone would be cause for remand, reconsideration of Plaintiff's limitations regarding use of her feet will be addressed and the inclusion or exclusion of related limitations in a residual functional capacity assessment will be explained because the right foot limitation was based on neuropathy (R. 476), and because later evidence indicates neuropathy was bilateral (*see*, *e.g.*, R. 1451).

## C.    *Consultative Examiner's Opinion*

Extensive discussion of Plaintiff's asserted error regarding the ALJ's rejection of Dr. Willner's opinion (Doc. 29 at 30) is not warranted in that the Court's finding on the previous alleged error encompasses a need for the ALJ to explain why evidence consistent with and supportive of the opinion has been rejected and, because determinations regarding the opinion cannot be based on lay opinion, *see Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), the ALJ must provide medically sound reasons for discounting the examiner's findings.

## D.    *Subjective Complaints*

Plaintiff maintains the ALJ failed to properly credit her

36

subjective complaints of pain and limitations.  (Doc. 29 at 34.)

Defendant responds that substantial evidence supports the ALJ's

credibility determination.  (Doc. 34 at 30.)  The Court concludes

explanation of the ALJ's credibility determination is warranted on

remand.

Though this record clearly contains evidence which could be

found contradictory to Plaintiff's claimed limitations, the Court

does not find an adequate explanation in the decision for the ALJ's

conclusion that Plaintiff's statements "concerning the intensity,

persistence and limiting effects of these symptoms are not entirely

credible."  (R. 23.)  ALJ Wolfe states the conclusion is based on

"the reasons explained in this decision" (*id.*), but the Court does

not find any explanation in the decision.  Defendant attempts to

provide the explanation lacking in the decision by citing evidence

which she considers inconsistent with Plaintiff's subjective

complaints (Doc. 34 at 31-32), but the ALJ merely reviews evidence

without analysis/explanation and, as discussed above, the Court

cannot find that a determination is based on substantial evidence

without an explanation from the ALJ of the reason for her

determination.  *See supra* pp. 24-25, 32.  The responsibility of a

district court on appeal of the ALJ's decision is to review only

evidence relied upon by the ALJ because neither the defendant nor

the reviewing court can do what the ALJ should have done--neither

can provide *post hoc* reasons for supporting an the decision.

37

*Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); *Dobrowolsky*, 606 F.2d at 406-07.  It is the ALJ's responsibility to explicitly provide reasons for her decision and analysis later provided by the defendant cannot make up for the analysis lacking in the ALJ's decision.  *Id.*  In other words, neither the Court nor Defendant can now do what the ALJ should have done.  247 F.3d 42, 44 n.7.

## V. Conclusion

For the reasons discussed above, the Court concludes this matter is properly remanded to the Acting Commission for further action consistent with this opinion.  An appropriate Order is filed simultaneously with this Memorandum.


<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge

DATED: November 2, 2018